ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 22 2007

at 12 o'clock and 55 min. P. M.
SUE BEITIA, CLERK                Page 2

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District OF HAWAII | |
|---|---|---|
| Name (under which you were convicted): ROY W. FRISBEE | | Docket or Case No.: CR 03-200 HG-02 |
| Place of Confinement: U.S.P. ATWATER | | Prisoner No.: 89213-022 |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) | |
| v. | ROY W. FRISBEE | |

MOTION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:
U.S. DISTRICT COURT — DISTRICT OF HAWAII
U.S. COURTHOUSE - 300 ALA MOANA BLVD.
HONOLULU, HAWAII 96850
    (b) Criminal docket or case number (if you know): D.C. # CR-03-002000-2-HG

2.  (a) Date of the judgment of conviction (if you know): JULY 7, 2005

    (b) Date of sentencing: JUNE 23, 2005
3.  Length of sentence: 250 MONTHS
4.  Nature of crime (all counts): CONSPIRACY TO DISTRIBUTE AND
TO POSSESS WITH INTENT TO DISTRIBUTE MORE
THAN FIFTY GRAMS OF METHAMPHETAMINE IN VIOLATION
OF 21 U.S.C. §§ 841(b)(1)(A) and 846 (COUNT I).
VIOLATION OF 21 U.S.C. § 841(a)(1)+(b)(1)(A) COUNT II
DISTRIBUTION OF MORE OF 50 GRAMS.

5.  (a) What was your plea? (Check one)
    (1)  Not guilty ☑        (2)  Guilty ☐        (3)  Nolo contendere (no contest) ☐
    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count
    or indictment, what did you plead guilty to and what did you plead not guilty to? _____

NOT APPLICABLE

6.  If you went to trial, what kind of trial did you have? (Check one)     Jury ☑     Judge only ☐

Page 3

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☐

8. Did you appeal from the judgment of conviction?    Yes ☑    No ☐

9. If you did appeal, answer the following:

(a) Name of court: NINTH CIRCUIT COURT OF APPEALS

(b) Docket or case number (if you know): CA # 05-10483

(c) Result: CONVICTION AFFIRMED

(d) Date of result (if you know): 7/12/06 — PETITION FOR REHEARING DENIED 8-30-06    JUDGMENT ENTERED ON

(e) Citation to the case (if you know): UNITED STATES v ROY W. FRISBEE

(f) Grounds raised: I) DENIAL OF A SUPPRESSION MOTION

II) DENIAL OF SUPPRESSION MOTION - VALIDITY OF THE WARRANT.

III) SUFFICIENCY OF THE EVIDENCE

IV) FAILURE TO DISCLOSE EVIDENCE

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☑

If "Yes," answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

NOT APPLICABLE

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

(5) Grounds raised: _____

NOT APPLICABLE

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐    No ☑

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____    NOT APPLICABLE

Page 4

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____ NOT APPLICABLE _____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?     Yes ☐  No ☐

(7) Result: _____

(8) Date of result (if you know): _____ NOT APPLICABLE

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____ ─ ── _____ NOT APPLICABLE _____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?     Yes ☐  No ☐

(7) Result: _____

(8) Date of result (if you know): _____ NOT APPLICABLE

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:        Yes ☐   No ☐

(2) Second petition:     Yes ☐   No ☐

Page 5

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: _____

_____ NOT APPLICABLE

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

I. WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILURE TO INVESTIGATE.

It is petitioner's contentions that if counsel had performed a complete and throughout investigation of the witness against petitioner he should have been aware of that key government witness Doug Farias, a notorious and well-known drug trafficker, albeit facing an indictment for drug distribution, it was alleged that he was continuing doing business as usual.

_____

(b) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why: _____ NINTH CIRCUIT COURT OF APPEAL WOULD NOT HEAR INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?
<u>Yes</u> ☐   No ☑

(2) If your answer to Question (c)(1) is "Yes," state:
Type of motion or petition: _____ NOT APPLICABLE

Name and location of the court where the motion or petition was filed: _____

_____

Page 6

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): *NOT APPLICABLE*

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❏  No ❏       *NOT APPLICABLE*

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❏  No ❏       *NOT APPLICABLE*

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❏  No ❏       *NOT APPLICABLE*

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____ *NOT APPLICABLE*

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____   *NOT APPLICABLE*   _____

_____

## II. WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR NOT CONDUCTING A MENTAL EVALUATION ON PETITIONER ON GROUNDS OF DIMINISHED CAPACITY OR SIGNIFICANTLY REDUCED MENTAL CAPACITY.

Petitioner argues that counsel was constitutionally ineffective when failed to conduct or request a mental evaluation hearing to explore the possibility that a mental disorder or significantly reduced mental capacity may have contribute to the commission of the offense.

_____

_____

(b) Direct Appeal of Ground Two:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

       Yes ❑    No ☑

    (2) If you did not raise this issue in your direct appeal, explain why: _____

NINTH CIRCUIT COURT OF APPEALS WOULD NOT HEAR
INEFFECTIVA ASSISTANCE OF COUNSEL CLAIMS ON DIRECT APPEAL

(c) Post-Conviction Proceedings:

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

       Yes ❑    No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

    Docket or case number (if you know): ____ NOT APPLICABLE

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

    _____

    _____

    (3) Did you receive a hearing on your motion, petition, or application?

       Yes ❑    No ❑    NOT APPLICABLE

    (4) Did you appeal from the denial of your motion, petition, or application?

       Yes ❑    No ❑    NOT APPLICABLE

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

       Yes ❑    No ❑    NOT APPLICABLE

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____

    Docket or case number (if you know): ____ NOT APPLICABLE

    Date of the court's decision: ____

    Result (attach a copy of the court's opinion or order, if available): ____

    _____

    _____

Page 8

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____ NOT APPLICABLE _____

III. WHETHER WITHHOLDING OF IMPEACAHING INFORMATION TO TRIAL COUNSEL AMOUNTED TO PROSECUTORIAL MISCONDUCT BY ASSISTANT UNITED STATES ATTORNEY.

Petitioner claims of constitutional deprivation and prosecutorial misconduct are premised in the theory that the withholding of incriminating statements was impeaching evidence and that, also, its non-production interfered with his counsel's ability to choose a proper defense strategy-in particular whether to pursue a different examination of government witness Doug Farias.

(b) Direct Appeal of Ground Three:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes ☐   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why: APPEAL ATTORNEY RAISED SIMILAR ISSUE ON DIFFERENT GROUNDS.

(c) Post-Conviction Proceedings:

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

    Yes ☐   No ☐

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____ NOT APPLICABLE

    Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____ NOT APPLICABLE

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____ NOT APPLICABLE _____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ☐   No ☐   NOT APPLICABLE

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ☐   No ☐   NOT APPLICABLE

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☐   No ☐   NOT APPLICABLE

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____ NOT APPLICABLE

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____ NOT APPLICABLE _____

IV. DID THE DISTRICT COURT ERRED BY SEALING THE MINUTES ORDER AND PREVENTING TRIAL COUNSEL TO BE AWARE OF ALLEGATIONS THAT A KEY GOVERNMENT WITNESS, ALBEIT FACING AN INDICTMENT FOR DRUG DISTRIBUTION, CONTINUOUS DEALING DRUGS AS USUAL?

    Petitioner contends that as result of the district court actions, petitioner was denied the right to a fair trial, and to possess impeaching evidence that could had discredited government key witness Doug Farias in violation of the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment.

(b)  Direct Appeal of Ground Four:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes ❑ No ☑

    (2) If you did not raise this issue in your direct appeal, explain why: APPEAL
ATTORNEY RAISED SIMILAR ISSUE ON DIFFERENT GROUNDS

(c)  Post-Conviction Proceedings:

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

    Yes ❑ No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____ NOT APPLICABLE

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑ No ❑   NOT APPLICABLE

    (4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑ No ❑   NOT APPLICABLE

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑ No ❑   NOT APPLICABLE

    (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____ NOT APPLICABLE

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____ NOT APPLICABLE _____

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____ NOT APPLICABLE _____

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?      Yes ☐   No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____ NOT APPLICABLE _____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: DO NOT REMEMBER

(b) At arraignment and plea: DO NOT REMEMBER

(c) At trial: REGINALD P. MINN ESQ.
841 BISHOP ST. # 2116, HONOLULU, HAWAII 96813

(d) At sentencing: REGINALD D. MINN ESQ.
841 BISHOP ST. # 2116, HONOLULU, HAWAII 96813

Page 12

(e) On appeal: CYNTHIA A. KAGIWADA
P.O. BOX 368, KANEOHE, HAWAII 96744

(f) In any post-conviction proceeding: NONE

(g) On appeal from any ruling against you in a post-conviction proceeding:

NOT APPLICABLE

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ☑ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐ No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: NOT APPLICABLE

(b) Give the date the other sentence was imposed: NOT APPLICABLE

(c) Give the length of the other sentence: NOT APPLICABLE

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐ No ☐    NOT APPLICABLE

Page 13

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you
must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not
bar your motion.*

PETITION IS TIMELY FILE.
JUDGMENT WAS ENTERED BY THE
NINTH CIRCUIT COURT OF APPEALS
ON AUGUST 30, 2006

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.
§ 2255, paragraph 6, provides in part that:
   A one-year period of limitation shall apply to a motion under this section. The limitation period
shall run from the latest of —
      (1) the date on which the judgment of conviction became final;
      (2) the date on which the impediment to making a motion created by governmental action in
violation of the Constitution or laws of the United States is removed, if the movant was
prevented from making such a motion by such governmental action;
      (3) the date on which the right asserted was initially recognized by the Supreme Court, if
that right has been newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or
      (4) the date on which the facts supporting the claim or claims presented could have been
discovered through the exercise of due diligence.

Page 14

Therefore, movant asks that the Court grant the following relief: _____

~~SEE ATTACHED MEMORANDUM OF POINTS~~

or any other relief to which movant may be entitled. ~~AND AUTHORITIES~~

_NONE_

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____

_10 · 11· 07_ (month, date, year).

Executed (signed) on _10 · 11· 07_ (date).

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion. _____

~~NOT APPLICABLE~~

IN FORMA PAUPERIS DECLARATION

[Insert appropriate court]

* * * * *

Roy W. Frisbee

Reg. No. 89213-022

U.S.P. Atwater

P.O. Box 019001

Atwater, CA 95301


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


| | | |
|---|---|---|
| ROY W. FRISBEE, | ) | |
| Petitioner, | ) | Case No. _____ |
| -vs- | ) | MEMORANDUM OF LAW AND |
| UNITED STATES OF AMERICA, | ) | POINTS OF AUTHORITIES |
| Respondent. | ) | IN  SUPPORT OF MOTION |
| _____ | ) | PURSUANT TO 28 U.S.C. § 2255. |


COMES NOW, Roy W. Frisbee, "hereinafter petitioner", acting pro se, respectfully presents this Memorandum of Law and Points in Authorities in support of the attached motion pursuant to 28 U.S.C. § 2255.

This motion incorporated by reference is based upon all the files and records in this case, and any and all evidence which may be adduced at the hearing of this motion.

DATED: This 11th day of October, 2007.

Respectfully submitted,

ROY W. FRISBEE

TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . iii

Statement of Jurisdiction . . . . . . . . . . . . . 1

Standard of Pro Se Litigants . . . . . . . . . . . 2

Statement of the Issues Presented . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . 5

Statement of the Facts . . . . . . . . . . . . . . 8

Summary of the Argument . . . . . . . . . . . . . . 9

Argument . . . . . . . . . . . . . . . . . . . . . 11

I. WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE

    FOR FAILURE TO INVESTIGATE . . . . . . . . . . . 11

    1. Standard of Review . . . . . . . . . . . . . 11

    2. Discussion . . . . . . . . . . . . . . . . . 12

II. WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY

    INEFFECTIVE FOR NOT CONDUCTING A MENTAL EVALUATION ON

    PETITIONER ON GROUNDS OF DIMINISHED CAPACITY OR

    SIGNIFICANTLY REDUCED MENTAL CAPACITY . . . . . . 16

    1. Standard of Review . . . . . . . . . . . . . 16

    2. Discussion . . . . . . . . . . . . . . . . . 16

III. WHETHER WITHHOLDING OF IMPEACHING INFORMATION TO

    TRIAL COUNSEL AMOUNTED TO PROSECUTORIAL

    MISCONDUCT BY ASSISTANT UNITED STATES

    ATTORNEY . . . . . . . . . . . . . . . . . . . 22

    1. Standard of Review . . . . . . . . . . . . . 22

    2. Discussion . . . . . . . . . . . . . . . . . 22

IV. DID THE DISTRICT COURT ERRED BY SEALING THE
    MINUTES ORDER AND PREVENTING TRIAL COUNSEL TO BE
    AWARE OF ALLEGATIONS THAT A KEY GOVERNMENT
    WITNESS, ALBEIT FACING AN INDICTMENT
    FOR DRUG DISTRIBUTION, CONTINUOUS DEALING DRUGS
    AS USUAL? . . . . . . . . . . . . . . . . . 29

    1. Standard of Review . . . . . . . . . . . . 29

    2. Discussion . . . . . . . . . . . . . . . . 29

Conclusion . . . . . . . . . . . . . . . . . . . 32

Certificate of Service . . . . . . . . . . . . . 33

TABLE OF AUTHORITIES

CASES                                          Page(s)

Baliestreri v. Pacifica Police Department,

    901 F.2d 696 (9th Cir. 1988) . . . . . . . . . . .    2

Berger v. Unied States,

    295 U.S. 78 (1935) . . . . . . . . . . . . . .   25

Brady v. Maryland,

    373 U.S. 83 (1963) . . . . . . . . . . 10, 23, 24

Brenan v. Blankenship,

    475 F.Supp. 149 (W.D. Va.1979) . . . . . . . . .   18

Brenan v. Blankenship,

    624 F.2d 109 (4th Cir.1980) . . . . . . . . . .   18

Brown v. Stevens,

    304 F.3d 677 97th Cir. 2003) . . . . . . . . . .   19

Culyer v. Sullivan,

    446 U.S. 335 (1980) . . . . . . . . . . . . . .   11

Daniels v. Woodford,

    428 F.3d 1181 (9th Cir. 2005). . . . . . . . . .   19

Giglio v. United States,

    405 U.S. 150 (1972) . . . . . . . . . . . 10, 23, 30

Haines v. Kerner,

    404 U.S. 519 (1972) . . . . . . . . . . . . . .    2

Houston v. Lack,

    487 U.S. 266 (1988) . . . . . . . . . . . . . .   33

Imbler v. Patchman,

    424 U.S. 409 (1976) . . . . . . . . . . . . . . 26

Lee v. United States,

    545 F.Supp. 662 (E.D. Va. 1982) . . . . . . . . . .  18

Lee v. United States,

    901 F.2d. 169 (4th Cir. 1983) . . . . . . . . . .  18

McMann v. Richardson,

    397 U.S. 759 (1970) . . . . . . . . . . . . . .  11

Olmstead v. United States,

    277 U.S. 438 (1928) . . . . . . . . . . . . . .  25

Rochin v. California,

    342 U.S. 165 (1952) . . . . . . . . . . . . . .  19

Riggs v. Fairman,

    399 F.3d 1179 (9th Cir.2005) . . . . . . . . . .  27

Silva v. Woodford,

    275 F.3d 825 (9th Cir. 2002) . . . . . . . . . 20, 24

Strickland v. Washington,

    466 U.S. 688 (1984) . . . . . . . . . . . . . . Passim

Strickler v. Greene,

    527 U.S. 263 (1999) . . . . . . . . . . . . . .  23

United States v. Agurs,

    427 U.S. 96 (1976) . . . . . . . . . . . . . . 14, 25

United States v. Bernal-Obeso,

    989 F.2d 331 (9th Cir. 1993) . . . . . . . . . .  25

United States v. Bogart,

    783 F.2d 1428 (9th Cir. 1986) . . . . . . . . . .  26

United States v. Koyajan,

    8 F.3d 1315 (9th Cir. 1993) . . . . . . . . . .  26

Walker v. Mitchell

    587 F.Supp 1432 (E.D> Va. 1981) . . . . . . . . . .  18

Watts v. United States,

    841 F.2d 275 (9th Cir. 1988) . . . . . . . . . . . .  32


UNITED STATES CONSTITUTION


Fifth Amendment . . . . . . . . . . . . . . . . . . . . . .  4, 31

Sixth Amendment . . . . . . . . . . . . . . . . . . . . . .  4, 31


STATUTES


21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . 1, 5

21 U.S.C. § 841(b)(1) . . . . . . . . . . . . . . . . . . . 1, 5

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . 1, 5

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . Passim

STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 2255, given that this court conducted the petitioner's trial for violations of title 21 U.S.C. §§ 846, 841 (a)(1) and (b)(1)(A), and filed the final judgment on July 7, 2005. [See Appeal Excerpt of Record 1-13]. Furthermore, this Honorable Court sentenced petitioner on June 23, 2005, to a term of imprisonment of 250 months. Petitioner filed a timely notice of appeal on June 30, 2005. On July 12, 2006, the Ninth Circuit Court of Appeals affirmed the judgment of the district court. On August 23, 2006, the United States Court of Appeals for the Ninth Circuit denied a petition for rehearing.  On August 30, 2006, the Court of Appeals entered the judgment affirming the district court's judgment.

## STANDARD FOR PRO SE LITIGANTS

Since Petitioner appearance as a pro se litigant, the Court, following the mandate of the United States Supreme Court on Haines v. Kerner, 404 U.S. 519 (1972), must reads is petition generously.  As such, dismissal is not appropriate unless it can be said "with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleading drafted by lawyers, it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him the relief that is now seeking." Haines, supra, at 520-21.  See also Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1988)("This court recognizes that it has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedure requirements.")

STATEMENT OF THE ISSUES PRESENTED

I. WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY
INEFFECTIVE FOR FAILURE TO INVESTIGATE.

It is petitioner's contentions that if counsel had
performed a complete and throughout investigation of the
witness against petitioner he should have been aware of that
key government witness Doug Farias, a notorious and well-
known drug trafficker, albeit facing an indictment for drug
distribution, it was alleged that he was continuing doing
business as usual.

II. WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY
INEFFECTIVE FOR NOT CONDUCTING A MENTAL EVALUATION ON
PETITIONER ON GROUNDS OF DIMINISHED CAPACITY OR SIGNIFICANTLY
REDUCED MENTAL CAPACITY.

Petitioner argues that counsel was constitutionally
ineffective when failed to conduct or request a mental
evaluation hearing to explore the possibility that a mental
disorder or significantly reduced mental capacity may have
contribute to the commission of the offense.

III. WHETHER WITHHOLDING OF IMPEACAHING INFORMATION
TO TRIAL COUNSEL AMOUNTED TO PROSECUTORIAL MISCONDUCT BY
ASSISTANT UNITED STATES ATTORNEY.

Petitioner claims of constitutional
deprivation and prosecutorial misconduct are premised in the
theory that the withholding of incriminating statements was

impeaching evidence and that, also, its non-production interfered with his counsel's ability to choose a proper defense strategy-in particular whether to pursue a different examination of government witness Doug Farias.

IV. DID THE DISTRICT COURT ERRED BY SEALING THE MINUTES ORDER AND PREVENTING TRIAL COUNSEL TO BE AWARE OF ALLEGATIONS THAT A KEY GOVERNMENT WITNESS, ALBEIT FACING AN INDICTMENT FOR DRUG DISTRIBUTION, CONTINUOUS DEALING DRUGS AS USUAL?

Petitioner contends that as result of the district court actions was denied the right to a fair trial and to possess impeaching evidence that could confront and discredit government key witness Doug Farias in violation of the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment.

STATEMENT OF THE CASE

In Count One of the final indictment, the government charges petitioner and seven other individuals with conspiracy to distribute and to possess with intent to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). [See Appeals Excerpt of Record 2-5]. Additionally, in  Count 2 of the final indictment, the government charged petitioner with knowing and intentionally possession with intent to distribute more than fifty grams, to wit 1039.8 grams, of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). [Appeals Excerpt of Records 5].

Prior to trial, petitioner filed a motion to suppress the evidence obtained on April 11, 2003, during the search of and around petitioner''s residence. [Appeals Excerpts of Records 14-55]. The government opposed the suppression motion. [Appeals Excerpt of Records 56-75]. On October 14, 2004, the court denied the suppression motion after hearing argument from defense counsel and the government. [See Trial Transcripts of 10/14/04 at 18-48, also see Appeals Excerpt of Records 76-107.]

On November 1, 2004, the day prior trial was to commence, Assistant United States Attorney Louis A. Bracco, along with ICE agent Laura Dye and FBI agent Timothy O'Malley, in behalf of the government met with the Honorable Helen Gillmor, United States District Judge, in an ex parte in-chambers conference to discus information regarding the

government star witness, Doug Farias was still involved in
drug dealing.  [See Trial Transcripts of 11/01/04 at 1-41.]
The information was reveled in about the middle of September
of 2004, when one of ICE agent Dye confidential informants
approached her and related the possibility of Doug Farias'
involvement in drug distribution.

The jury trial began on November 2, 2004, before the
Honorable Judge Gillmor [Trial Transcript 11/02/04 at 30].
Petitioner was tried along with co-defendant William Villa
[Id.].  Following the testimony of Donald Morton, petitioner
moved for judgment of acquittal and renewed his motion to
suppress the evidence seize during the search of his
residence [Appeal Excerpt of Records 273-78 (Trial
Transcripts 11/30/04 at 17-22)]. The district court denied
the motion for judgment of acquittal [Appeals Excerpt of
Records 278 (Trial Transcripts 11/30/04 at 124)] and the
renewed motion to suppress the evidence [Appeals Excerpt of
Records 271A (Trial Transcripts 11/30/04)].

On December 2, 2004, the jury returned its verdict
finding petitioner guilty on Count 1 and Count 2. [Appeals
Excerpt of Records 281]  Following the return of the
verdicts, the penalty phase of the trial commenced to
determine the amount of drugs quantity attributable to
petitioner [Appeal Except of Records 280 (Trial Transcripts
12/02/04 at 41)]. On December 3, 2004, the jury returned its
verdict finding petitioner accountable for more than 15
kilograms of methamphetamine of which 1.5 kilograms or more
as ice (Count 1); and between 500 grams and 1.5 kilograms of

-6-

methamphetamine of which between 500 grams and 1.5 kilograms
was ice, (Count 2). [Appeal Excerpts of Records 283-84 (Trial
Transcripts 12/03/04 at 18-19; Appeal excerpts of Records 289-
93]. The jury also found that the conspiracy in  Count 1
involve 5 or more participants and the petitioner was a
manager or supervisor. [Appeal Excerpts of Records 284 (Trial
Transcripts 12/03/04 at 19)].

On June 23, 2005, the district court sentenced
petitioner to 250 months imprisonment as to each count 1 and
2, to run concurrently and five years supervised release as
to each counts 1 and 2, to run concurrent. [Appeal Excerpts
of Records 301-04; 06/23/05 Trial Transcripts at 38]. The
final judgment was filed on July 7, 2005. [Appeal Excerpts of
Records 301-09].  Petitioner filed a timely notice of appeal
on June 30, 2005. See Fed.R.App.P. 4(0)(1)(A)(i)(2). [Appeal
Excerpts of Records 299-300]. The Ninth Circuit Court of
Appeals affirmed the judgment of the district court on July
12, 2006. On Augustt 23, 2006, the United States Court of
Appeals for the Ninth Circuit a denied a petition for
rehearing. On August 20, 2006, the Court of Appeals entered
the judgment affirming the district court's judgment.

STATEMENT OF THE FACTS

The historical facts of this case are well known and need not be repeated in full, however, a brief summary is required.

In February of 2002, the Honolulu Police Department ("HPD") began to investigate an Asian Criminal Enterprise located on the windward side of Oahu. [Appeal Excerpts of Records 37]. The investigation focused on distributors of crystal methamphetamine, also known as "ice". [Id.]. During the course of the investigation, Donald Morton was identified as a supplier of multiple pounds of ice. [Id.]. The HPD joined forces with the FBI to investigate the higher level suppliers of the ice distribution network. [Id.]. As part of the investigation, law enforcement obtained wire taps on the telephones of Donald Morton and Doug Farias. [Appeal Excerpts of Records 38-39].

As a result of the investigation, the government charged petitioner with conspiracy to distribute and possession with intent to distribute methamphetamine along with several other co-defendants named as follows: Jack Frisbee, Doug Farias, William Villa, Anthony Valentin, Ferdinand Pasion, Samuel Pasion, and Manuel Cabral. [Appeal Excerpts of Records 1-5]. Additionally, the government charged petitioner with knowing and intentionally possession with intent to distribute methamphetamine and with the forfeiture of certain amount of money, personal and real estate property. [Appeal Excerpts of Records 5, 9-11].

SUMMARY OF THE ARGUMENT

It is petitioner's contentions that if counsel had performed a complete and throughout investigation of the witness against petitioner he should have been aware of that key government witness Doug Farias, a notorious and well-known drug trafficker, albeit facing an indictment for drug distribution, it was alleged that he was continuing doing business as usual. See Strickland v. Washington,

Further, Petitioner argues that counsel was constitutionally ineffective when failed to conduct or request a mental evaluation hearing to explore the possibility that a mental disorder or significantly reduced mental capacity may have contribute to the commission of the offense. See Strickland, supra,

In addition, Petitioner avers that the district court failed to exercise its discretionary powers to order a mental evaluation hearing.

Furthermore, Petitioner claims of constitutional deprivation and prosecutorial misconduct are premised in the theory that the withholding of incriminating statements was impeaching evidence and that, also, its non-production interfered with his counsel's ability to choose a proper defense strategy-in particular whether to pursue a different examination of government witness Doug Farias.

Moreover, Petitioner asserts that as result of the district court actions when the government submitted additional documents under seal on November 8, 2004 and the Court issued a sealed minute order that same day, petitioner

was denied the right to a fair trial and to possess evidence that could have permitted trial counsel to confront and impeach government key witness Doug Farias in violation of the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment. See Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972).

I. WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR
FAILIURE TO INVESTIGATE.

It is petitioner's contentions that if counsel had
performed a complete and throughout investigation of the
witnesses against petitioner he should have been aware of
that key government witness Doug Farias, a notorious and well-
known drug trafficker, albeit facing an indictment for drug
distribution, it was alleged that he was continuing doing
business as usual.

1. Standard of Review

The Sixth Amendment guarantees the right to
effective assistance of counsel in criminal prosecutions. See
McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)(6th
Amendment right to counsel is right to effective assistance
of counsel). The right to effective assistance of counsel
applies to both retained and appointed counsel. See Cuyler v.
Sullivan, 446 U.S. 335, 344-45 (1980).

"The benchmark for judging any claim of
ineffectiveness must be whether counsel's conduct so
undermined the proper functioning of the adversarial process
that the trial cannot be relied on as having produced a just
result." Strickland v. Washington, 466 U.S. 668, 687 (1984).
In Strickland, the Supreme Court established a two-prong test
to evaluate ineffective assistance of counsel claims. "The
purpose of the effective assistance guarantee of the Sixth
Amendment is . . . to ensure that criminal defendants receive
a fair trial." Id at 689.

An ineffective assistance claim has two compartments:

-11-

A petitioner must show that counsel performance was deficient and that deficiency prejudice the defense. Strickland, supra, 466 at 688. Performance is deficient if it fails below an objective standard of reasonableness, which is defined in terms of prevailing professional norms. Id at 688.

2. Discussion

Here, as in Strickland, counsel minimal and limited investigation into petitioner's co-conspirators towards key government witnesses and notorious drug dealers reflects a wrong professional judgment.

Petitioner contends that counsel did not conduct a reasonable pretrial investigation.  His decision not to expand the investigation beyond government discovery fell short of the professional standards.

Any reasonable competent attorney would have realized that pursuing an investigation of his co-conspirators, all notorious drug dealers, turned cooperating witnesses against petitioner, could have lead counsel to uncover possible information necessary to confront and impeach such dubious characters.  Such investigation was necessary for making a choice among possibles defenses, particularly given the gravity of the charges petitioner was facing.

The record of this case underscores the unreasonableness of counsel conduct suggesting that the failure to investigate throughly stemmed from inattention, not strategic judgment.

First, with an reasonable and substantial investigation counsel could have been enabled to uncover

-12-

the alleged continuous drug dealing of key government witness
Doug Farias, and impeach his testimony permitting to attack
his credibility and also bolstered and aided counsel theory
of defense that the testimony of co-conspirators turning
government witnesses was laced with lies, since it was in the
best interest of the witnesses to pin the rap on someone else
so their own roles would not face extreme scrutiny. Second,
petitioner believe that has counsel adequately investigated
key witness Farias, he could had established a reasonable
probability that impeaching Farias it would have changed the
jury's decision.

    Strickland requires counsel to investigate every
conceivable line of possible defenses no matter how unlikely
the effort would be to assist the defendant during trial.
This conclusion is based on the much more limited principle
that "strategic choices made after less than complete
investigation are reasonable only to the extent that
reasonable professional judgment support the limitations."
Strickland, supra, at 690-91.

    Trial attorney conducted no pretrial investigation
for the purpose of examining witnesses was not a "reasonable
professional judgment support the limitations". Id.
Notwithstanding this lack of investigation trial counsel
conducted a cross-examination of key witness, Doug Farias
without any success in impeaching his testimony. Counsel made
no attempt to investigate and pursue any leads that permitted
the impeachment of witnesses and present a better defense for
petitioner. Counsel evident inability through the cross

examination was not strategic but a utterly lack of preparation.

Further, counsel decision not to expand the investigation beyond the material available fell short of the professional standards articulated by the American Bar Association (ABA) which determined as "guidelines to determining what is reasonable". Strickland, supra, at 688.

The ABA guidelines provides that investigations "should comprise efforts to discover all reasonable available evidence to rebut any aggravation evidence presented by the prosecutor."

The question presented by petitioner is not whether counsel's ineffectiveness must be demonstrated by showing the trial would have resulted in a different verdict, but whether the failure to investigate and produce any evidence prevented counsel to "create a reasonable doubt that did not otherwise exist." United States v. Agurs, 427 U.S. 96 (1976). Upon such showing, constitutional errors has been committed. Id.

In the case at bar, it cannot be fairly said that the failure to investigate of trial counsel, while argumentatively explainable, do not raise to ineffective representation. It is conceivable that had counsel performed those duties he failed to do, had he been able to investigate and had taken the time to prepare for and been able to discover about key witness alleged continuous drug dealing, the impeachment of the key witness would have been accomplished.

WHEREFORE, Because none of this things were done petitioner was deprived of his Sixth Amendment right to effective assistance of counsel.

II.  WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE
FOR NOT CONDUCTING A MENTAL EVALUATION ON PETITIONER ON
GROUNDS OF DIMINISHED CAPACITY OR SIGNIFICANTLY REDUCED
MENTAL CAPACITY.

Petitioner argues that counsel was constitutionally
ineffective when failed to conduct or request a mental
evaluation hearing to explore the possibility that a mental
disorder or significantly reduced mental capacity may have
contribute to the commission of the offense.

1.  Standard of Review

In order to establish the claim of ineffective
assistance of counsel, a defendant must show that counsel
failed to act with that customary skills and knowledge which
ordinarily prevails in the area and that he was prejudiced as
a result of that failure. Strickland v. Washington, 466 U.S.
668 (1984). Under Strickland, Petitioner must demonstrate
both that his attorney's performance was deficient ("cause")
and that the deficiency prejudiced his defense
("prejudiced").

2.  Discussion

Petitioner argues that his counsel's failure to
investigate his prior mental condition constitutes an
impermissible deficiency that rendered effective assistance
and that there is a reasonable probability that the result of
the proceedings would have been different if counsel fully
investigated and seek expert evaluation of petitioner's
mental and psychological state of mind.

-16-

Further, Petitioner argues that his counsel's minimal effective representation must include investigation into petitioner's past and present mental condition. Petitioner's believe that he was denied effective assistance of counsel where counsel failed to (1) consult with or have petitioner examined by a psychiatrist, (2) fully investigated petitioner's mental history and (3) uncovered any possible mental capacity theory of defense. Where the record on its face discloses that defense counsel failed to investigate facts in manner required of diligent and conscientious advocate, conviction must be reversed because defendant has thereby been deprived of adequate assistance of counsel.

a. Counsel's Performance

In Strickland, supra, the Supreme Court discussed the broad duty of attorneys to investigate matters that materially affect their clients cases.

"Counsel has a duty to make a reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." 466 U.S. at 691.

Several courts have discussed in detail the duty of an attorney to investigate in full the mental history of his client, (1) where a counsel do not makes some exploration of the mental capacity defense and fails to take an obvious and readily available investigatory step which would have made

-17-

the defense viable, (2) does not produce reasonable tactical
reasons for not pursuing any investigation at all, and (3)
raises no other plausible defense, courts may find
ineffective assistance of counsel. Walker v. Mitchell, 587
F.Supp 1432, 1443 (E.D. Va.1984). See also Brenan v.
Blankenship, 472 F.Supp. 149 (W.D. Va.1979) aff'd mem. 624
F.2d 1093 (4th Cir. 1980); and Lee v. United States, 545
F.Supp. 662 (E.D. Va. 1982), aff'd mem. 701 F.2d 169 (4th
Cir. 1983).

In Walker, the defense attorney failed to examine
records or to interview people familiar with defendant's
mental history. Although a psychiatrist had conducted an
competency examination and admitted that he could not say
whether defendant mental condition was sane.  The district
court found  that the attorney's effort fell short of
satisfying the constitutional requirement of effective
assistance of counsel. Walker, supra at 1440-44.

Petitioner find the application of the Strickland
standard to the facts in Walker helpful to the court inquiry
and conclusion in this case. In the  case at bar, trial
attorney failed to investigate and restricted his pretrial
investigation to discussion with petitioner, review of the
indictment against petitioner and examination of the
prosecutor's file. Petitioner's counsel failed to secure
records or to pursue inquiries regarding petitioner's mental
condition.  Trial counsel never conducted a personal
investigation in petitioner's life before his arrest, like
possible mental problems, the use of illegal drugs, etc.

Instead of requiring the help of an investigator and seeking a continuance, counsel simply ignored this possible avenue of defense. Making such a decision and having neglected to pursue obvious approaches that would had led to a possible defense fall short of an acceptable level of performance by counsel-especially where it leaves the client to face his own brother testifying against him in open court. See Brown v. Sternes, 304 F3d. 677 (7th Cir. 2003)(Failure to investigate adequately and discover petitioner's mental history fell below objectively reasonable standard of performance and he was prejudice by his counsel's failure to investigate and to request a competency hearing.) Petitioner avers that the present record do not provides any evidence to support or deny a conclusion that petitioner's ability to reason was substantially impaired. In fact, the evidence indicates petitioner's behavior was irrational and impaired when faced with the facts of confronting his brother, fiance and co-conspirators testimonies against him, making the government's case much stronger.

When petitioner declined the offer of the government to accept a plea and decided instead to go to trial he exposed himself to a stiff sentence. Any rational person facing that burden would have had accepted the government deal and avoided be in prison for a lengthly period of time. See Riggs v. Fairman, 399 F.3d 1179 (9th Cir. 2005)(Deficient performance of counsel when defendant was exposed to stiff sentence.); Daniels v. Woodford, 428 F3d. 1181 (9th Cir. 2005) Murder defendant was entitled to habeas relief . . .

there was evidence that his mental condition could have been used as a defense). Silva v. Woodford, 279 F.3d 825 (9th Cir. 2002)(Counsel's failure to investigate defendant's background was unreasonable under circumstances and appeared to have been result of negligence rather than any tactical decision.)

Trial counsel had a duty either to make an investigation or else "a reasonable decision" that investigation was unnecessary. Strickland, 466 U.S. at 691. Trial counsel appears to have made no decision at all.  Trial counsel never consulted with petitioner the possibility to explore that type of defense, albeit counsel was well aware of the mental struggle that petitioner was going through. Petitioner was put in a position where he would have to hear his brother, the mother of his daughter, and acquaintances to present testimony against him, testimony from co-conspirators who have a great deal to gain, and whose testimony was not reliable evidence.

Given the gravity of the charges, a reasonable lawyer would have made some effort to investigate any possible defense.

A straightforward application of the first Strickland requirement compels a conclusion that these "acts and omissions" of petitioner's counsel during trial constitute errors "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Strickland, supra, at 687. As the record reflects, the performance of petitioner's lawyer by failing to investigate possible mental condition fell below the constitutional

minimum.

WHEREFORE, for the reasons elucidated above
petitioner respectfully urges that an evidentiary hearing be
granted.

III.  WHETHER WITHHOLDING OF IMPEACHING INFORMATION TO TRIAL
COUNSEL AMOUNTED TO PROSECUTORIAL MISCONDUCT BY ASSISTANT
UNITED STATES ATTORNEY.

A.  Assistant United States Attorney Actions Amounted
to Prosecutorial Misconduct By Virtue of His Failure to
Disclose Impeaching Evidence Prosecutor Violated Its Duty to
Disclose Favorable Evidence to the Accused Violated
Petitioner's Due Process Right.

1. Standard of Review

For a habeas corpus petitioner to prevail on a claim
of ineffective assistance of counsel, he must satisfy the two-
part test established by the Supreme Court in Strickland v.
Washington, 466 U.S. 668 (1984). First, the petitioner must
establish that his attorney's performance "fell below an
objective standard of reasonableness", and second, the
petitioner must establish that there is a "reasonable
probability" that but for counsel's error, the outcome of his
case would have been different. See Strickland, 466 U.S. at
688-694.

2. Discussion

Petitioner claims of constitutional deprivation and
prosecutorial misconduct are premised in the theory that the
withholding of incriminating statements was impeaching
evidence and that, also, its non-production interfered with
his counsel's ability to choose a proper defense strategy-in
particular whether to pursue a different examination of
government witness Doug Farias.

Petitioner contends that Assistant United States

Attorney Louis Bracco committed misconduct when violated its duty to disclose favorable evidence to the defense under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), when it failed to provide trial attorney with information regarding government witness Doug Farias's continuing drug dealings.

The withholding evidence was not only exculpatory but its deprivation resulted in prejudice towards petitioner. In Strickler v. Greene, 527 U.S. 263, 281-82 (1999), the Supreme Court hold that, "to prove a Brady claim, a defendant must show that the violation resulted in prejudiced to the defendant so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."

Petitioner contends that depriving his trial attorney of the statements rendered by a confidential informant to government officials was, not only improper and reprehensible, but also prejudicial to petitioner during his trial.

It is petitioner contention that, if the statements had been timely produced to the defense, it would have altered the conduct of the bench trial by causing petitioner's attorney to change strategy and denounce in front of the jury that Doug Farias, the start government witness, was, allegedly still dealing drugs within two months before trial.

By withholding the information the government prevented trial attorney to impeach Farias's regarding the

alleged continuous drug dealing. It is petitioner belief that
the statements against Doug Farias were material because
would have so undermined the credibility of a key prosecution
witness that the jury could not have believed his testimony.
The allegations of Farias continuous drug dealing surely
would have highlighted his dishonest nature and that
additional evidence of Farias penchant for drug dealing would
have affected the jury when his proclivity for selling drugs
had been firmly established.

Albeit Farias testified extensively and was cross-
examined by trial counsel, the government never disclosed the
allegations of continuous drug dealing to the defense.  That
piece of information was highly relevant impeachment evidence
and was favorable to the defense and although the government
it has a duty to disclose all material information casting a
shadow on a government witness's credibility trial counsel
was not aware because of AUSA Bracco actions.

In Silva v. Brown, 416 F.3d 980, 986-87 (9th Cir.
2005), the court held that "material evidence was withheld in
violation of Brady because reasonable probability of
different result existed had the prosecutor fully revealed
plea agreement with crucial witness."

The government knew, of course, that it had a duty to
disclose the fact that it had taken upon itself to request a
ex parte hearing with the district judge. Brady v. Maryland,
373 U.S. 83, 87 (1963) ["suppression by the prosecution of
evidence favorable to an accused upon request violates due
process where the evidence is material either to guilt or

punishment, irrespective of the good or bad faith of the prosecution."] See also United States v. Agurs, 427 U.S. 97, 104 (1976) [exculpatory material must be disclosed even if no specific request is made for such evidence]. In this case, trial attorney for petitioner never new and failed to investigate anything regarding key witness Doug Farias.

It is well settled that a public prosecutor "is the representative not an ordinary party to a controversy, but of a sovereignty whose obligation to govern at all, and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78 (1935).

It must not be forgotten that "decency, security and liberty alike demand that government officials shall be subjected to the same rule of conduct that are commands to the citizen . . . To declare that in the administration of the criminal law the end justifies the means -- to declare that the government may commit crimes in order to secure the conviction of a private criminal -- would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face." Olmstead v. United States, 277 U.S. 438 485 (1928)(J. Brandeis, dissenting).

"Egregious wrongdoing by the government" not only mandates reversal, but also permits dismissal of charges for "outrageous government conduct." United States v. Bernal-Obeso, 989 F.2d 331, 336 [prosecutor withheld critical evidence about informant's criminal background].

The Ninth Circuit has made it clear that the

"judiciary . . . may exercise its supervisory power [to dismiss charges] to make it clear that the misconduct was serious, that the government's unwillingness to own up to it was more serious still and that steps must be taken to avoid a recurrence of this chain of events." United States v. Kojayan, 8 F.3d 1315, 1324 (9th Cir. 1993) [prosecutor lied about witness cooperation agreement and exploited falsehood in closing argument]; see also United States v. Bogart, 783 F.2d 1428 (9th Cir. 1986) [outrageous governmental conduct may warrant dismissal of an indictment when the government devises "vindictive and deliberate schemes" to secure the defendant's conviction at any cost"]. The Supreme Court has also held that "as a matter of principle, we perceive no less an infringement of a defendant's rights by the knowledge use of perjured testimony than by the deliberate withholding of exculpatory information. The conduct in either case is reprehensible, warranting criminal prosecution as well as disbarment." Imbler v. Patchman, 424 U.S. 409, 431 n.34 (1976).

        The government's bad faith decision to intentionally wait until the day before the date for the trial to start was compounded by its bad faith failure to disclose that it had done so in order to avoid being held accountable in a court of law. This misconduct was compounded further still by the non-disclosure that help on obtaining a guilty verdict. This is surely conduct that "shocks the conscience."

        "[W]e are compelled to conclude that the proceedings by which this conviction was obtained do more that offend

-26-

some fastidious squeamishness or private sentimentalism about combating crime too energetically.  This is conduct that shocks the conscience." Rochin v. California, 342 U.S. 165, 172 (1952) [conviction thrown out on due process grounds after police forced defendant to vomit drugs in order to prosecute him].

In the case at bar, the prosecutor failed to disclose to the defense allegations that the government key witness was still dealing drugs, albeit the government obtained this information at least six weeks before the initiation of trial. On November 1, 2004, the day before the trial was to begin, the government notified the court, in an ex parte hearing that some ICE agent had learned thorough an associate of an confidential informant, that key government witness Doug Farias was continuing dealing drugs. Although the government expressed desire to investigate further, they requested advice from the Court because of concerns about the informant's confidentiality and safety.

The next day trial started and the government never disclosed any information regarding Doug Farias to the defense.  It is worthy to note that the government submitted additional documents under seal to the Court on November 8, 2004. The Court issued a sealed minute order the same day. Petitioner's trial attorney never received or had access to either documents.

By his actions AUSA Bracco violated petitioner's right to due process as well his right to confront witnesses by withholding the Doug Farias impeachment information.

-27-

WHEREFORE, for the reasons stated above petitioner respectfully request an evidentiary hearing be granted and order the government to disclose all exculpatory information regarding key witness Doug Farias.

IV. DID THE DISTRICT COURT ERRED BY SEALING THE MINUTES ORDER
AND PREVENTING TRIAL COUNSEL TO BE AWARE OF ALLEGATIONS THAT
A KEY GOVERNMENT WITNESS, ALBEIT FACING AN INDICTMENT FOR
DRUG DISTRIBUTION, CONTINUOUS DEALING DRUGS AS USUAL?

Petitioner asserts that as result of the district
court actions when the government submitted additional
documents under seal on November 8, 2004 and the Court issued
a sealed minute order that same day, petitioner was denied
the right to a fair trial and to possess evidence that could
have permitted trial counsel to confront and impeach
government key witness Doug Farias in violation of the Due
Process Clause of the Fifth Amendment and the Confrontation
Clause of the Sixth Amendment.

1. Standard of Review

To succeed on an ineffective assistance of counsel
claim, petitioner must use the familiar standard enumerated
in Strickland v. Washington, 466 U.S. 688 (184), and show
both that his counsel's performance was constitutionally
deficient and that he was prejudice by his counsel's errors.

2. Discussion

In the instant case, the government came up with some
disturbing information regarding his key government witness
and indicted co-conspirator Doug Farias. Allegedly, Farias
was continuously dealing methamphetamine within two months
before trial. The government obtained this information
through a reliable confidential informant at least six weeks
before trial commenced. The government recognizing that this
information could raise a potential problem in their case,

notified the district court via an ex parte motion.

On November 1, 2004, the day before the trial was to begin this Honorable Court conducted an ex parte hearing regarding the likely dangerous ramifications this type of information would produce in the government case.

Petitioner avers that the district court judge failed to evaluate the prospective prejudice to petitioner by depriving defense counsel of the facts of the alleged incriminating accusation against key government witness Farias would cause to petitioner's case.

Further, the district court failed to perform any balance analysis to determine whether the prejudicial effect of negating defense counsel knowledge of the allegations against key witness Farias substantially outweigh petitioner right to a fair trial.

During the ex parte hearing with AUSA Bracco, the district judge expressed her concern, particularly from a possible Giglio violation. See Giglio v United States, 405 U.S. 150 (withholding or suppression of evidence by prosecutor in criminal case as vitiating conviction).

Albeit the district judge was uncomfortable that key government witness Doug Farias taking the witness stand without the allegations of continuous drug dealing coming to the attention of defense counsel and acknowledging that a potential problem was lurking over, the district court agreed with the government not to violate Doug Farias bail status and not to question him about the truthfulness of the allegations.

Furthermore, petitioner asserts that AUSA Bracco waited until the day before trial to uncover this information to the district court, when he had it in his possession two months before trial putting the district court in a difficult position. The district court worrying about petitioner trial counsel schedule, counsel was committed to start a murder case, wrestled with the idea of continuing the case until January of 2005 allowing the government to conclude with an expanded investigation on the subject, nevertheless, decided to start trial on the original date.

At the end of the ex parte hearing trial judge stated: "And I need to have this cloud over your witness removed, or we need to tell the defense counsel about this cloud." See Ex Parte Hearing Transcripts Ln 7, pg 37.

Although the district court judge juggled with the idea of a continuance and revealing to defense counsel the allegations, the trial started the next day. On November 8, 2004, the government submitted additional documents under seal and the court issued a sealed minute order the same day. Since defense counsel did not have access to either of these documents he was left in the dark regarding this potential problem by the prosecutor and trial judge.

WHEREFORE, Petitioner contends that the district court erred when decided not to continue the case and uncover the allegations to petitioner's counsel depriving petitioner to a fair trial in violation of the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment.

-31-

CONCLUSION

The decision whether to conduct a full evidentiary hearing in a § 2255 motion is committed to the district court's discretion. Watts v. United States, 841 F.2d 275, 277 (9th Cir. 1988)(per curiam). Further, it is well established that a court may deny a motion brought under § 2255 without an evidentiary hearing only if the movant's allegations, viewed against the files, and record, either do not state a claim for relief or the case conclusively show that the movant is entitled to no relief.

In this case, petitioner claims can not be conclusively decided on the basis of documentary testimony and evidence in the record. Accordingly, for all the foregoing reasons, as well as such any additional and further reasons as may be presented at a hearing on the motion, petitioner motion should granted and an evidentiary hearing should be schedule at the Court's convenience.

WHEREFORE, Based on the foregoing arguments and authorities, the record in this case and the petition itself, Petitioner, Roy W. Frisbee, respectfully urges this Honorable Court to grant Petitioner his Motion pursuant to 28 U.S.C. § 2255.


Dated: This 11th day of October, 2007.


Respectfully submitted,


ROY W. FRISBEE

-32-

CERTIFICATE OF SERVICE

I, ROY W. FRISBEE, Petitioner pro se hereby declares that on this 11th day of October, 2007, I mailed a true and correct copy of the following:

Motion to Vacate, Set Aside, or

Correct a Sentence

under 28 U.S.C. § 2255

Which is deemed filed at the time it was delivered to prison authorities for forwarding, see Houston v. Lack, 487 U.S. 266 (1988), by placing same in a sealed, postage prepaid envelope addressed to:

U.S. Attorney's Office

AUSA Louis A. Bracco, Esq.

300 Ala Moana Blvd., Suite 6100

Honolulu, Hawaii 96813

I declare, under the penalty of perjury [Title 28 U.S.C. § 1746], that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

ROY W. FRISBEE