EDWARD H. KUBO, JR.        #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI       #2286
Chief, Narcotics Section

LOUIS A. BRACCO
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:  lou.bracco@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROY W. FRISBEE, | ) | CIV. NO. 07-00533 HG/BMK |
| | ) | CR. NO.  03-00200-02 HG |
| Petitioner, | ) | |
| | ) | GOVERNMENT'S SUPPLEMENTAL |
| vs. | ) | REPLY TO DEFENDANT ROY W. |
| | ) | FRISBEE'S 28 U.S.C. § 2255 |
| UNITED STATES OF AMERICA, | ) | PETITION TO VACATE |
| | ) | CONVICTION/SENTENCE; |
| Respondent. | ) | EXHIBITS "A"-"D"; CERTIFICATE |
| | ) | OF SERVICE |
| | ) | |
| | ) | |

GOVERNMENT'S SUPPLEMENTAL REPLY TO DEFENDANT ROY W. FRISBEE'S
28 U.S.C. § 2255 PETITION TO VACATE CONVICTION/SENTENCE

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . i - ii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

II.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . 1

      A.   Trial Proceedings . . . . . . . . . . . . . . . . 1

      B.   Appellate Proceedings . . . . . . . . . . . . . . 3

III.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . 4

      A.   Offense Conduct . . . . . . . . . . . . . . . . . 4

           1.   Roles of the Conspirators . . . . . . . . . 4

           2.   The FBI Investigation . . . . . . . . . . . 6

      B.   Trial Proceedings . . . . . . . . . . . . . . . . 7

           1.   The Government's Case in Chief . . . . . . . 7

           2.   The Defense Case . . . . . . . . . . . . . . 9

           3.   The Forfeiture Phase . . . . . . . . . . . . 10

IV.   TIMELINESS OF § 2255 PETITION . . . . . . . . . . . . 11

V.    OVERVIEW OF FRISBEE'S PRESENT § 2255 CLAIMS . . . . . 11

VI.   STATEMENT OF THE LAW RE: CLAIMS
      OF INEFFECTIVE ASSISTANCE OF COUNSEL . . . . . . . . . 12

VII.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 15

      A.   Mr. Minn Was Not Ineffective During Either
           Pre-trial Proceedings or at Trial . . . . . . . . 15

           1.   Frisbee's Ineffective Assistance Claims. . . 15

           2.   Claim as to Ineffective Assistance by Reason
                of Failure to Investigate Witness Doug Farias'
                Activities While Farias Was Admitted to
                Pretrial Release . . . . . . . . . . . . . . 16

3.    Claim as to Ineffective Assistance by Reason of
Failure to Request/Obtain Mental Evaluation
Hearing . . . . . . . . . . . . . . . . . . .  19

B.    No Impeachment Information
Was Withheld From Frisbee at Trial . . . . . . . .  22

C.    Frisbee Was Not Prejudiced By the
Sealing of the District Court's Minute Order . . .  23

VIII.    CONCLUSION . . . . . . . . . . . . . . . . . . . .  25

**TABLE OF AUTHORITIES**

FEDERAL CASES                                           PAGE(s)

Burger v. Kemp,
    483 U.S. 776 (1987) . . . . . . . . . . . . . . . 14

Bruton v. United States,
    391 U.S. 123 (1968) . . . . . . . . . . . . . . . 9

Cooper v. Fitzharris,
    586 F.2d 1325 (9th Cir. 1978)(en banc),
    cert. denied, 440 U.S. 974 (1979). . . . . . . . . 13

Eggleston v. United States,
    798 F.2d 374 (9th Cir. 1986) . . . . . . . . . 14, 18

Hill v. Lockhart,
    731 F.2d 568 (8th Cir. 1984), aff'd (en banc),
    764 F.2d 1279 (8th Cir. 1984),
    aff'd, 474 U.S. 52 (1985) . . . . . . . . . . . . 14

Kimmelman v. Morrison,
    477 U.S. 365 (1986) . . . . . . . . . . . . . . . 12

Nix v. Whiteside,
    475 U.S. 157 (1986) . . . . . . . . . . . . . . . 13

Strickland v. Washington,
    466 U.S. 668 (1984) . . . . . . . . . . . . . 13, 14

United States v. Austin,
    817 F.2d 1352 (9th Cir. 1987) . . . . . . . . . . 12

United States v. Cronic,
    466 U.S. 648 (1984) . . . . . . . . . . . . . . . 13

United States v. Hoffman,
    733 F.2d 596 (9th Cir. 1984)(Nelson, Jr., dissenting),
    cert. denied, 469 U.S. 1039 (1984) . . . . . . . . 13

United States v. Medina-Verdugo,
    637 F.2d 649 (9th Cir. 1980) . . . . . . . . . . . 14

United States v. Rodriguez-Ramirez,
    777 F.2d 454 (9th Cir. 1985) . . . . . . . . . . . 12

United States v. Schaflander,
      743 F.2d 714 (9th Cir. 1984),
      cert. denied, 470 U.S. 1058 (1985) . . . . . . . . . . .   14

United States v. Schwartz,
      274 F.3d 1220 (9th Cir. 2001)  . . . . . . . . . . . . .   11

United States v. Sutton,
      794 F.2d 1415 (9th Cir. 1986)  . . . . . . . . . . . . .   13


                  FEDERAL CASES                          PAGE(s)

18 U.S.C. § 4241(a) . . . . . . . . . . . . . . . . . . . . .   21

I.    INTRODUCTION

This pleading is filed pursuant to Hawaii Local District Court Rule 7.10, and responds to the pro se 28 U.S.C. § 2255 petition filed by convicted defendant Roy W. Frisbee on October 22, 2007.

In short, Frisbee contends in his § 2255 petition that his conviction (and sentence) after trial in 2004 should be vacated by reason of (1) ineffective assistance provided by his trial counsel, (2) improper withholding of witness impeachment information by the prosecutor, and (3) an erroneous sealing order by the district court.  Our position is that Frisbee's § 2255 petition should be denied, because as we explain herein, (1) his ineffective assistance of counsel claims are without merit, (2) no witness impeachment information was withheld by the prosecutor at Frisbee's trial, and, (3) the District Court's sealing order, even if erroneous, did not prejudice Frisbee.

II.    BACKGROUND

A.    Trial Proceedings

On September 17, 2003, a nine-count (Superseding) Indictment was returned in the District of Hawaii charging Petitioner Roy Frisbee, and seven other defendants, with participating in an extensive methamphetamine trafficking conspiracy (Count 1) in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Frisbee was also individually charged in Count 2 of this Indictment with having possessed a specific quantity of

methamphetamine for distribution in violation of 21 U.S.C.
§ 841(a)(1), and, in Count 9 with criminal forfeiture of
specified items of personal property alleged to have been
proceeds of the drug conspiracy charged in Count 1.

Of the eight defendants named in this Indictment, six
pled guilty to the conspiracy offense.  Roy Frisbee and a second
defendant, William Villa, proceeded to a jury trial before Hawaii
District Judge Helen Gillmor.  Trial proceedings commenced before
Judge Gillmor on November 2, 2004 and continued intermittently
for thirteen days over the next five weeks.  Guilty verdicts
against both defendants as to the drug conspiracy offense, and
against Petitioner Frisbee as to the substantive drug offense
charged in Count 2, were returned on December 2, 2004.

Trial concluded the following day, December 3, 2004,
when the jury's special verdict(s) as to sentencing facts and
forfeiture were returned.  One series of special verdicts made
findings as to drug quantity attributable as to each defendant,
and a "role-in-the-offense" finding as to Roy Frisbee.  The
jury's special forfeiture verdict (involving Frisbee only) found
that the $168,995.00 cash, three automobiles, three motorcycles,
and sports boat identified in Count 9 of the Indictment were each
proceeds of the drug trafficking conspiracy charged in Count 1.

Sentencing proceedings as to Petitioner Frisbee were
held on June 23, 2005.  Because the sentencing record established

2

that Frisbee had previously been convicted of two or more felony crimes of violence, Judge Gillmor found Frisbee to be a "career offender" under the Sentencing Guidelines, which provided for an advisory guideline range of 360 months - life.  Judge Gillmor declined to follow the advisory guidelines however, and instead, imposed concurrent sentences of 250 months incarceration as to Counts 1 and 2.  Concurrent five year supervised release terms were also imposed as to each count.  Pursuant to the jury's special forfeiture verdict as to Count 9 of the Indictment, Judge Gillmor ordered that Frisbee's interest(s) in the $168,995.00 cash, three automobiles, three motorcycles, and  sports boat, be forfeited.

B.    Appellate Proceedings

Petitioner Frisbee appealed his conviction(s) after trial to the Ninth Circuit Court of Appeals.  By written memorandum opinion filed July 12, 2006, Frisbee's conviction(s) and sentence were affirmed.  A copy of a Ninth Circuit memorandum opinion affirming Frisbee's conviction(s) and sentence is annexed hereto as Exhibit "A".

Frisbee thereafter petitioned the three judge panel which adversely decided his appeal for a rehearing.  Frisbee's petition for panel rehearing was denied on August 23, 2006.

3

III.   STATEMENT OF FACTS

A.   Offense Conduct

1.   Roles of the Conspirators

The Frisbee drug organization successfully moved very large quantities of methamphetamine ("ice") from California to Hawaii on an ongoing basis during 2001-2003.  Two brothers, Jack and Roy Frisbee, and their accomplices, successfully moved 40-60 pounds of methamphetamine monthly.  Over its life, the conspiracy was responsible for the movement of between 300-600 pounds of methamphetamine from California to Hawaii (TR 5/78-79, 86-88, 102; TR 6/99-102; TR 7/41-42).[1]

Jack and Roy Frisbee were the managers of this drug ring.  Jack Frisbee directed the affairs of the organization while residing in Northern California.  Roy Frisbee resided in Hawaii, and at Jack's direction, managed the day-to-day drug activity.  Other "core" members of this drug ring included Jack Frisbee's friend Doug Farias, Jack's brother-in-law Anthony ("Tony") Valentin, and William Villa, a close associate of Roy Frisbee (TR 5/74-78, 89-100; TR 6/93-100).

Jack Frisbee arranged to obtain pound quantities of methamphetamine from a drug source in California, and caused this

_____

[1]   Citations herein are to the trial transcripts reported in 13 volumes as "TR1" - "TR13."  Our factual statement (Parts A and B herein) is reproduced from the Government's Appellate (Answering) Brief in United States v. Roy Frisbee, CA No. 05-10483.

4

methamphetamine to be sent to Hawaii for distribution.
Multi-pound quantities of methamphetamine were secreted in
(emptied) boxes of computer software, which were shrink wrapped
after packing, so as to appear unopened.  The packages containing
these drugs were then shipped from California to different
locations in Hawaii, and upon arrival, were retrieved by various
conspirators.  Roy Frisbee and William Villa, among others,
retrieved packages containing methamphetamine from the designated
shipping locations.  Associates who permitted their
residence/premises to be used to receive drug packages were paid
$2,000.00 per shipment (TR 5/74-75, 83-93, 117-118, 170;
TR 7/20-28).

Once the drugs were retrieved in Hawaii, Roy Frisbee
oversaw their distribution.  Most of the methamphetamine was
provided to Doug Farias, who in turn, re-distributed the
methamphetamine in pound quantities to Donald Morton or other
Hawaii drug dealers.  Both Roy Frisbee and William Villa
delivered boxes containing the methamphetamine to Farias
(TR 5/92-94, 117-118, 130; TR 6/99-102; TR 7/20-28; TR 8/81-83,
131-143).

Doug Farias paid the Frisbee brothers approximately
$25,000.00 in cash for each pound of "ice" provided to him.
These cash drug proceeds were sometimes personally handed over to
Roy Frisbee by Farias at different locations in Hawaii, and

sometimes, picked up from Farias by William Villa and delivered to Roy Frisbee.  Millions of dollars in cash drug proceeds were thus collected by Roy Frisbee in Hawaii (TR 5/80, 93-97, 103-104; TR 6/102-104; TR 7/28-30).

Tony Valentin assisted the Frisbee brothers to carry out this conspiracy in several ways.  Principally, Valentin systematically received large amounts of accumulated cash drug proceeds from Roy Frisbee, and delivered this cash to a "courier" in Waikiki, who in turn carried the cash back to California for the mainland drug source(s).  These cash deliveries involved hundreds of thousands of dollars.  At a later point in the conspiracy, Valentin received single pound quantities of "ice" from Roy Frisbee, and re-distributed this "ice" to others (TR 3/73-95; TR 5/94-97, 106).

2.    <u>The FBI Investigation</u>

The Frisbee brothers drug organization was dismantled as a result of court-authorized electronic surveillance.  FBI agents obtained electronic surveillance orders for Doug Farias' cellular telephone, which they monitored in February and March 2003.  The electronic surveillance of Farias' telephone furnished the link to the Frisbee brothers, Villa, Valentin, and others (TR 6/4-25, 31-40; TR 7/9-14, 47-52, 65-113).

In April 2003, as a result of these wiretaps and related investigation, the FBI obtained and executed a series of

6

search warrants.  On April 11, 2003, a search warrant executed at
Roy Frisbee's residence resulted in the recovery of approximately
3½ pounds of "ice," $168,995.00 in cash, and the seizure of three
vehicles, three motorcycles, and a Boston Whaler sports boat
(TR 4/67-71, 72-82, 88-99, 102-106).  On the same day, Tony
Valentin was caught in possession of approximately 2/3 of a pound
of "ice" which he had obtained from Roy Frisbee, but had not yet
distributed (TR 3/84-94; TR 4/42-49).  An additional pound of
"ice" and $50,000.00 cash were earlier seized from Doug Farias in
February 2003, while electronic surveillance was ongoing,
incident to a vehicle search (TR 5/98-99; TR 7/38-40, 85-87, 91).

     B.   <u>Trial Proceedings</u>

     1.   <u>The Government's Case in Chief</u>

The facts summarized in Part A herein were proved in
the Government's case in chief at trial through:  (1) tape
recordings of the conspirators' telephone conversations
intercepted pursuant to the wiretap order(s) (TR 6/4-22;
TR 7/47-52, 65-113), (2) testimony regarding the seizure of "ice"
and cash from the residences of Roy Frisbee (TR 4/67-71, 72-82,
88-99, 102-106) and Tony Valentin (TR 4/42-49), and from Doug
Farias' vehicle (TR 7/38-40, 85-87), (3) testimony from
cooperating accomplice witnesses Jack Frisbee (TR 5/62-106), Doug
Farias (TR 6/82-104; TR 7/19-114), Tony Valentin (TR 3/59-96),
and Donald Morton (TR 8/123-144), and (4) testimony from an FBI

7

agent as to a pre-arrest inculpatory oral statement made by William Villa (TR 6/25-30).

Accomplice witnesses Jack Frisbee and Tony Valentin were conspiracy "insiders," who provided direct testimony about the roles in the conspiracy of fellow insiders Roy Frisbee and William Villa (TR 3/59-96; TR 5/74-106). Doug Farias, the key middleman marketing the organization's "ice" in Hawaii, described receiving pounds of "ice" on an ongoing basis from Roy Frisbee and Villa, and, returning cash drug proceeds to Roy Frisbee, both in person, and through Villa (TR 6/93-104; TR 7/28-30, 65-101). Drug distributor Donald Morton provided corroborating testimony which evidenced Villa's involvement with Farias in a particular "ice" transaction (TR 8/139-143; TR 10/10-13).

Law enforcement witnesses provided testimony about the drug and money seizures from Roy Frisbee, Tony Valentin, and Doug Farias (TR 4/42-49, 67-71, 72-82, 88-99, 102-106; TR 6/93; TR 7/19-114). Evidence as to the weight and purity of the methamphetamine seized was provided by a Honolulu Police Laboratory Analyst (TR 5/6-36). Roy Frisbee's then girlfriend, Valdean Lani, also provided testimony which evidenced Roy Frisbee's possession of significant amounts of cash and "ice" at different times during the conspiracy (TR 4/15-34).

FBI Agent Tim O'Malley provided testimony as to William Villa's pre-arrest inculpatory oral statement(s). During a

non-custodial interview which took place about a month before his
arrest, Villa acknowledged to FBI agents that he knew that the
cash monies which he received from Doug Farias (and delivered to
Roy Frisbee)[2] were proceeds of drug activity (TR 6/25-30).  A
second FBI agent, Rachel Wallock, who was called as a witness in
the defense case, confirmed Villa's admission(s) (TR 10/47-50).

### 2.    The Defense Case

Neither Roy Frisbee nor William Villa testified in his
own defense at trial, and Roy Frisbee presented no defense
witnesses (TR 10/23-24; 102-103).  William Villa called Pauline
Yin (his mother, TR 10/91-101), Michelle Alipio (his girlfriend,
TR 10/59-71) and Donald Morrison (his employer, TR 10/71-91) as
witnesses to present various information about his personal and
employment background.  Villa also called an FBI agent, Rachel
Wallock, to give additional testimony about his pre-arrest FBI
interview  (TR 10/33-58).

The defense testimony also revealed that a Tanita
(gram) scale and numerous plastic baggies -- but no drugs -- were
found when the FBI executed a search warrant on Villa's residence
(TR 10/67-68).

---

[2]    Based on the rule of <u>Bruton v. United States</u>, 391 U.S.
123 (1968), the portion of Villa's statement wherein Villa stated
that he delivered the monies to Roy Frisbee was redacted and not
presented to the jury (<u>see</u> TR 5/184-186; TR6/26-30).

3.   The Forfeiture Phase

No rebuttal evidence was presented (TR 10/132).  The jury returned guilty verdicts as to both Defendants, and special verdicts (as to drug quantity and leadership role) in the sentencing phase of trial.[3]  Thereafter, additional witnesses were called in the forfeiture phase of the trial, which pertained only to Roy Frisbee.

Two "title-holders", Darryl Russell (TR 13/28-38) and Russell Hayashi (TR 13/39-43), and FBI Agent O'Malley (TR 13/43-46), were called as forfeiture phase witnesses by the Government.  Valdean Lani was recalled in the forfeiture phase by the defense (TR 13/46-53).  The jury returned a special forfeiture verdict, which found that the $168,995.00 cash, three automobiles, three motorcycles, and sports boat seized incident to the warranted search of Roy Frisbee's residence, were each proceeds of the drug conspiracy (TR 13/74-75, 78).

---

[3]  The guilt and sentencing fact phases of the trial were bi-furcated, in order to provide each Defendant with the opportunity to refrain from testifying at the guilt phase, while allowing for the opportunity to later testify at the sentencing phase, in the event a conviction resulted (TR 8/169-179; TR 9/19-30).  As it turned out, each Defendant elected not to testify at either phase (TR 10/23-24, 102-103; TR 12/34-35).

By reason of the "forfeiture phase" applicable to Defendant Frisbee (only), jury arguments/submissions were actually tri-furcated (TR 13/18-25).  Defendant Roy Frisbee also did not testify at the trial's forfeiture phase (TR 13/53).

IV.    TIMELINESS OF § 2255 PETITION

Petitioner Frisbee was sentenced in the District Court
on June 23, 2005.  His conviction(s) and sentence were thereafter
affirmed on appeal by the Ninth Circuit by memorandum opinion
filed July 12, 2006.  Frisbee's petition for panel rehearing was
subsequently denied on August 23, 2006.

For purposes of a § 2255 petition, a judgment becomes
final (and the limitations period begins to run) upon the
expiration of the time during which the movant could have sought
review by direct appeal.  United States v. Schwartz, 274 F.3d
1220, 1223 (9th Cir. 2001).  Because Frisbee did not file for
certiorari review in the Supreme Court, the limitation period as
to his conviction(s) began to run 90 days after the August 23,
2006 denial of his rehearing petition, that is, November 22,
2006.  Accordingly, it appears that Frisbee's present § 2255
petition is timely filed within the one year limitation period
measured from November 22, 2006.

V.    OVERVIEW OF FRISBEE'S PRESENT § 2255 CLAIMS

In his present § 2255 Petition, Frisbee essentially
raises three claims:  (A) that his retained attorney (Reginald
Minn, Esq.) provided ineffective assistance of counsel as to
specified pre-trial and trial matters, (B) that the Prosecutor
improperly withheld witness impeachment information (concerning
trial witness Doug Farias) during trial, and (C) that the

District Court erroneously sealed a minute order concerning an in-camera submission by the Government.

We particularly address each of these claims in Part VII herein.  However, in short, our position is that all of Frisbee's collateral claims are without merit.

We submit that Mr. Minn was not ineffective, for the reasons discussed infra in Part VII.  As to Frisbee's remaining claims concerning alleged witness impeachment information, our position is that the Ninth Circuit has already squarely decided, during the litigation of Frisbee's direct appeal, that the information concerning witness Farias (which was presented to the trial judge in camera) was not subject to disclosure. Accordingly, neither the Prosecutor nor the Court was required to provide the in camera information to Frisbee.

VI.    STATEMENT OF THE LAW RE: CLAIMS
OF INEFFECTIVE ASSISTANCE OF COUNSEL

Trial counsel is strongly presumed to have rendered effective assistance.  United States v. Austin, 817 F.2d 1352, 1354 (9th Cir. 1987); Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); United States v. Rodriguez-Ramirez, 777 F.2d 454, 458 (9th Cir. 1985).

In order to establish that a defendant has been deprived of his right to effective assistance of trial counsel, the defendant has the burden of establishing (1) specific acts or omissions by his attorney which fall below the performance of

12

reasonably competent counsel, and, (2) that such specific errors prejudiced the defendant to the extent that the errors "undermined the reliability of the finding of guilt." United States v. Cronic, 466 U.S. 648, 659 n.26 (1984); Strickland v. Washington, 466 U.S. 668, 687-690 (1984); United States v. Sutton, 794 F.2d 1415 (9th Cir. 1986); Cooper v. Fitzharris, 586 F.2d 1325, 1330 (9th Cir. 1978)(en banc), cert. denied, 440 U.S. 974 (1979).

To demonstrate prejudice as a result of his attorney's ineffectiveness, a defendant must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, supra, 466 U.S. at 691-696. Courts should review such claims skeptically. United States v. Hoffman, 733 F.2d 596, 604 (9th Cir. 1984)(Nelson, Jr., dissenting), cert. denied, 469 U.S. 1039 (1984). In examining attorney conduct, the court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment. Nix v. Whiteside, 475 U.S. 157, 165 (1986).

The Ninth Circuit requires that a defendant claiming ineffective assistance of counsel specifically identity the acts or omissions that are alleged not to have been the result of reasonable professional judgment; then the court must determine, in light of all the circumstances, whether the identified acts or

13

omissions were outside the wide range of professionally competent assistance. United States v. Schaflander, 743 F.2d 714, 717-718 (9th Cir. 1984), cert. denied, 470 U.S. 1058 (1985). It is important to bear in mind that counsel is not required to perform perfectly, Hill v. Lockhart, 731 F.2d 568, 572 (8th Cir. 1984), aff'd (en banc), 764 F.2d 1279 (8th Cir. 1984), aff'd, 474 U.S. 52 (1985); United States v. Medina-Verdugo, 637 F.2d 649, 653 (9th Cir. 1980) and, ". . . the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, supra, 466 U.S. at 690.

An ineffective assistance claim based on counsel's duty to present a defense and/or investigate must be considered in light of the strength of the government's case. Eggleston v. United States, 798 F.2d 374 (9th Cir. 1986). "A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland v. Washington, supra, 466 U.S. at 691. As the Supreme Court re-emphasized in citing Strickland v. Washington, supra, in Burger v. Kemp, 483 U.S. 776, 789 (1987):

> Judicial scrutiny of counsel's
> performance must be highly
> deferential. It is all too
> tempting for a defendant to second

14

guess counsel's assistance after
conviction or adverse sentence, and
it is all too easy for a court, the
examining counsel's defense after
it has proved unsuccessful, to
conclude that a particular act or
omission of counsel was
unreasonable.  (Citation omitted)
A fair assessment of attorney
performance requires that every
effort be made to eliminate the
distorting effects of hindsight, to
reconstitute the circumstances of
counsel's challenged conduct, and
to evaluate the conduct from
counsel's perspective at the time.

VII.    <u>ARGUMENT</u>

A.    Mr. Minn Was Not Ineffective During Either
      <u>Pre-trial Proceedings or at Trial.</u>

1.    <u>Frisbee's Ineffective Assistance Claims.</u>

Frisbee contends that Mr. Minn failed to provide

effective assistance in two ways.  Frisbee first claims that Mr.

Minn was ineffective by failing to conduct pre-trial

investigation as to the activities of co-conspirator Doug Farias.

Farias, named as both a co-conspirator and co-defendant, had

pleaded guilty prior to trial, and was a cooperator and a

prospective accomplice witness against Frisbee and co-defendant

William Villa.

Frisbee also claims that Mr. Minn's performance was

ineffective because he failed to seek/obtain a mental evaluation

hearing.  Frisbee argues that a mental evaluation hearing would

15

have allowed Mr. Minn the opportunity to "explore" the "possibility" of a reduced mental capacity defense.

We address these separate claims, in turn, below.

2.     Claim as to Ineffective Assistance by Reason of Failure to Investigate Witness Doug Farias' Activities While Farias Was Admitted to Pretrial Release.

Unlike Petitioner Frisbee (and cooperating conspirators Jack Frisbee and Donald Morton), cooperating conspirators Doug Farias and Anthony Valentin were admitted to pre-trial release. Thus, two of the four accomplice witnesses who provided testimony against Frisbee (Farias and Valentin ) were out of custody at the time of trial.

As to one of these two accomplice witnesses, Doug Farias, Frisbee claims in his petition that Mr. Minn was ineffective by failing to perform "a complete and thorough investigation" of Farias' activities. Frisbee contends that had Mr. Minn conducted such investigation, he would have discovered that Farias was "continuing [drug] business as usual" (Memorandum at 11). These allegations by Frisbee about Farias are <u>pure conjecture</u>.

Undoubtedly, Frisbee's present speculative allegations concerning Farias' [alleged] post-Indictment drug activities stem from the <u>in camera</u> presentation made by Government counsel to trial Judge Gillmor. The <u>in camera</u> proceedings before Judge Gillmor are described in detail at pp. 32-38 of the Government's

16

Answering Brief (submitted February 17, 2006) in response to
Frisbee's direct appeal brief.  (We have annexed this excerpted
portion of our appellate brief hereto as Exhibit "B").

The FBI investigation which was reported to Judge
Gillmor during the <u>in camera</u> proceedings conclusively
demonstrates <u>that investigation was conducted as to Farias'</u>
<u>activities while on bond</u> (albeit by the FBI and not Mr. Minn),
and, that this investigation failed to disclose any evidence that
Farias was involved in drug trafficking while on pre-trial
release.  In fact, the FBI investigation revealed the opposite,
i.e., that that rumors about Farias were <u>not</u> substantiated, and
therefore, <u>no impeachment</u> <u>information</u> about Farias existed.  In
affirming Frisbee's conviction on direct appeal, the Ninth
Circuit <u>expressly</u> found that the information about Farias which
was reported <u>in camera</u> did not have to be disclosed to Frisbee
(see Exhibit "A").

Consequently, Frisbee's conjectural claim that a
generalized investigation of Farias by Mr. Minn would likely have
uncovered evidence of drug activity by Farias — when a
particularly focused investigation of Farias for the same purpose
conducted at the same time by trained FBI agents failed to reveal
any evidence of drug activity — is factually flawed.  The FBI
found <u>no</u> evidence that Farias engaged in any drug activity while
on bond.

17

The likely reason that <u>no</u> impeachment evidence was found is that none existed. Even assuming <u>arguendo</u> that the FBI investigation failed in some way to uncover some improper activity by Farias, Mr. Minn <u>cannot</u> be found to have performed ineffectively by failing to uncover impeachment information which a highly reliable investigative agency such as the FBI could not uncover. Frisbee has failed to point out any specific investigative avenues which should have been followed by Mr. Minn, the omission of which prejudiced him.

It additionally bears emphasis that a claim of ineffective assistance based on defense counsel's failure to investigate must be considered in light of the strength of the Government's case. See e.g., <u>Eggleston v. United States</u>, 798 F.2d 374 (9th Cir. 1986). Doug Farias was but <u>one of four</u> accomplice witnesses who provided trial testimony against Frisbee. Another of the accomplice witnesses was Frisbee's own brother Jack, whose testimony (we submit) was more compelling than the trial testimony of the other accomplices combined. And, beyond the three (other) accomplice witnesses, Frisbee's girlfriend, Valdean Lani, provided additional significant inculpatory testimony as to Frisbee's possession of methamphetamine and large amounts of cash.

Substantial physical evidence against Frisbee was also presented. This evidence included $168,000 cash recovered from

inside Frisbee's safe, and, approximately 3½ pounds of methamphetamine found in the backyard area of his house. In short, the evidence at trial of Frisbee's guilt was overwhelming. See also the Ninth Circuit's discussion (in Exhibit "A") as to the sufficiency of the evidence against Frisbee.

> 3.   Claim as to Ineffective Assistance by Reason of Failure to Request/Obtain Mental Evaluation Hearing.

Frisbee also contends that Mr. Minn provided ineffective assistance by failing to request/obtain a mental evaluation hearing. Frisbee claims that such a hearing was necessary in order to "explore the possibility" of a mental disorder, or, a significantly reduced mental capacity (Memorandum at 16). However, Frisbee fails to point to any objective fact or circumstance which might have reasonably caused Mr. Minn to question Frisbee's mental capacity.

Frisbee's failure to even allege any such sign or circumstance is particularly telling. First, given Frisbee's extensive criminal history and his many years housed in the Hawaii prison system, an existing mental infirmity would have almost certainly been evident from Frisbee's criminal/incarceration history[4]. However, Frisbee's criminal

---

[4]   Frisbee's substantial criminal history and background is reported in PSR ¶¶ 43-66. Aside from a single assessment as a teenager, no mental health history or concerns are reported. See PSR ¶¶ 62, 64. See also Defendant Frisbee's Sentencing Memorandum filed (under seal) June 17, 2005.

history and prison records revealed no information which would have reasonably caused Mr. Minn to question Frisbee's mental condition.

Second, Frisbee had an important managerial role in the long ongoing conspiracy offense, which role was testified to by his accomplices, and found beyond a reasonable doubt by the trial jury. This managerial role evidences Frisbee's mental acuity and competency, and belies Frisbee's present gratuitous post-conviction musings about "exploring" whether that his mental faculties <u>might</u> "possibly" have been impaired.

And most importantly, Frisbee's proffered debriefing information (provided before he withdrew from cooperation) demonstrates that Frisbee had no apparent mental disability or infirmity which prevented him from recalling and explaining his conduct. Both Mr. Minn and FBI agent Tim O'Malley personally participated in extensive debriefing sessions with Frisbee, wherein Frisbee described in detail his role (and the roles of others) in the drug conspiracy. The information provided by Frisbee was fully coherent, and congruent to information provided about the conspiracy by other cooperators. At no time during these meetings did Frisbee's behavior, or the information he provided about his role in the offense, reasonably suggest to Mr. Minn <u>or to FBI agent O'Malley</u> that Frisbee's mental condition should be evaluated.

20

Nor do any of the post-conviction factual allegations made by Frisbee in his petition otherwise suggest that Frisbee may have actually had any mental infirmity. Frisbee's petition is devoid of any allegation as to any history of psychological or mental diagnosis or treatment.

Indeed, the closest Frisbee comes to factually questioning his mental acuity is his suggestion (made with 20/20 hindsight) that by declining the Government's plea offer and electing to proceed to trial, he did not act "rationally" (Memorandum at 19). But, of course, numerous defendants decline plea offers and proceed to trial virtually every day in the state and federal courts of our nation. Clearly, the act of electing to face trial rather than enter a guilty plea, does not, by itself, evidence mental impairment.

In short, Frisbee's petition is _totally_ devoid of any factual allegations which might have reasonably suggested to a competent attorney that a mental evaluation/examination for Frisbee should have been sought prior to trial. Such a hearing may be held only upon a showing of "reasonable cause" to believe that a defendant may be suffering from a mental disease or defect (see 18 U.S.C. § 4241(a)).

Annexed hereto as Exhibits "C" and "D" are the affidavit of FBI agent O'Malley (Exhibit "C") and Declaration of

Mr. Minn (Exhibit "D")[5] which provide ample evidence as to
Frisbee's comprehension of the nature of the charges pending
against him, ability to assist in his own defense, and, as to an
absence of any mental impairment.

> B.   No Impeachment Information
>      Was Withheld From Frisbee at Trial

Frisbee argues in his petition that the trial
prosecutor committed misconduct by failing to disclose to the
defense certain information concerning accomplice witness Doug
Farias which Frisbee claims is impeachment information.  The
information which Frisbee claims should have been produced was
reported by the prosecutor in camera to the trial judge (Judge
Gillmor); Judge Gillmor ruled that the information was not
subject to disclosure.

In making this misconduct claim in his present
petition, Frisbee essentially re-raises the same claim which was
previously made and decided adversely to him on direct appeal.
See Exhibit "A" at 2-3.  Our position is that Frisbee's renewed
claim concerning the (alleged) Farias witness information should
now be summarily dismissed, because the precise issue which
Frisbee now raises was previously litigated on direct appeal, and
decided adversely to Frisbee.

---

[5]   Notwithstanding the Court's attorney-client privilege
waiver order, Mr. Minn declined to be interviewed by Government
counsel.  Instead, Mr. Minn provided a declaration as to relevant
factual information (Exhibit "D").

C.    Frisbee Was Not Prejudiced By the
      <u>Sealing of the District Court's Minute Order</u>

Frisbee's final claim is that he was denied a fair

trial because the minute order which memorialized Judge Gillmor's

finding that no basis existed upon which to disclose the <u>in</u>

<u>camera</u> information concerning Farias, was filed under seal.

Frisbee's claim as to prejudice from the sealing of this order

<u>incorrectly presumes</u> the existence of impeachment information

which was wrongfully withheld from him.

As is explained in part C herein (and the Ninth Circuit

decision which is annexed as Exhibit "A"), none of the <u>in camera</u>

information concerning Farias involved impeachment information.

Accordingly, Frisbee's present claim (Memorandum at 29) that the

sealing of this order deprived him of witness information is

simply wrong.

Frisbee cannot establish prejudice from the sealing of

this minute order (whether or not sealing was appropriate),

because both Judge Gillmor and the Ninth Circuit have already

ruled that Frisbee was not entitled to the <u>in camera</u> information.

The minute order itself contains no privileged or confidential

information[6]; this particular minute entry was most probably <u>not</u>

intended by the Court to be sealed, and likely, inadvertently

sealed through clerical error.

_____

    [6]  The sealed two-page minute order dated November 8, 2004,
is designated in the district court docket as entry # 288.

In hindsight, Government counsel acknowledges that it would have been prudent to have provided <u>notice</u> to Frisbee concerning the fact of (but not the content of) the making of an <u>in camera</u> presentation to Judge Gillmor.  Also, it would have been preferable for the one-page minute order <u>not</u> to have been filed under seal.  Either circumstance would thus have effectively provided Frisbee <u>notice</u> of the fact of (but not the content of) the <u>in camera</u> presentation.

But even assuming <u>arguendo</u> that the minute order should have been filed without seal, Frisbee has not, and cannot, demonstrate prejudice.  Had the minute order <u>not</u> been sealed, Frisbee would have been informed only that an <u>in camera</u> presentation had been made to the Court concerning potential witness information, and, that the Court found no information existed which was required to be disclosed.

The fact that Frisbee learned of the <u>in camera</u> presentation at the appellate stage, rather than the trial stage, further demonstrates that Frisbee was not prejudiced.  Because Frisbee learned of the <u>in camera</u> presentation prior to making his direct appeal, Frisbee was able to fully litigate the propriety of the <u>in camera</u> presentation, and the appropriateness of Judge Gillmor's disclosure ruling, on direct appeal.  Accordingly, Frisbee was not prejudiced, because he obtained a full review of this issue on direct appeal.

24

VIII.    <u>CONCLUSION</u>

For the reasons stated above, Frisbee's present § 2255 petition should be dismissed.

DATED: January 23, 2008, at Honolulu, Hawaii.

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By  <u>/s/ Louis A. Bracco</u>
    LOUIS A. BRACCO
    Assistant U.S. Attorney

    Attorneys for Plaintiff
    UNITED STATES OF AMERICA

25

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was duly served upon the following person by depositing said copy in the United States mail, postage prepaid, as set forth below:

ROY W. FRISBEE
Register No. 89213-022
P.O. BOX 019001
Atwater, CA 95301
PRO SE

DATED: January 24, 2008, at Honolulu, Hawaii.


/s/ Shelli Ann H. Mizukami

26