AFFIDAVIT

Timothy J. O'Malley, after being duly sworn, deposes and states as follows:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed for approximately seven years. In 2004, I was assigned to the Honolulu Division of the FBI where I conducted organized crime and dug investigations. A subject in one of my investigations was Roy Frisbee. Frisbee was arrested in April 2003 on drug trafficking charges.

2. After Frisbee was arrested and prior to his trial, I personally interviewed Frisbee, in the presence of his attorney, Reginald Minn, at the Honolulu Federal Detention Center on February 6 and February 20, 2004.

3. Prior to the February 6 interview, I reviewed the terms of a proffer letter provided by the Honolulu United States Attorney's Office with Frisbee and his attorney. Frisbee stated that he understood the purpose of the proffer letter and his obligation to comply with its terms.

4. Frisbee then cooperated with the government by providing information about his and others' involvement in the trafficking of crystal methamphetamine. Frisbee first related his criminal history, including dates and details leading to his involvement in crystal methamphetamine trafficking with his older brother, Jack.

5. Frisbee described in detail how he was initiated into his brother's drug trafficking organization while on supervised release from incarceration by the State of Hawaii. He then provided the names and roles of other individuals involved in the organization. Frisbee explained the roles of each individual in the organization including the manufacturer, managers, distributers and couriers. Frisbee also described his position in the organization relative to the

Page 1



EXHIBIT "C"

other members. Frisbee provided details regarding quantities of drugs, prices paid and the organization's distribution methods. Frisbee provided the names of individuals who received drugs from the organization and the quantities of drugs they received. In addition, Frisbee discussed several conflicts between different members of the organization.

6. When interviewed on February 20, 2004, Frisbee was shown a photo array where he identified numerous members of the drug trafficking organization by name. He described the role each of these individuals played, how he met them, and details of their meetings. Frisbee was also shown approximately ten items of evidence seized during a search warrant at his home in April 2003. Frisbee identified the evidence and explained the significance of each item. Included in the evidence were several cellular telephones, a phone book, documents with telephone numbers, an e-mail address, and photographs. Frisbee discussed each item of evidence and explained the relevancy, if any, to the case. In addition, Frisbee offered suggestions for obtaining additional evidence against other members in the organization. For example, Frisbee suggested that the FBI obtain the toll records for his personal cellular telephone account because they may identify incoming calls from members of the organization operating in California. Frisbee provided the names of several other individuals who were involved in drug trafficking activities with Frisbee and his brother, Jack.

7. The information Frisbee provided during the February 6th and February 20th interviews was consistent with other evidence I obtained through wire taps, search warrants and by conducting numerous interviews with other subjects in the investigation.

8. During the interviews with Frisbee I asked him many questions. Some of the questions were broad in scope and Frisbee was able to provide detailed answers that covered several years of activity. For example, Frisbee was able to explain his criminal history and how he became involved in drug trafficking with his brother Jack. I also asked Frisbee numerous specific questions that required Frisbee to recall specific details such as drug quantities, prices and locations of drug activity. Frisbee conveyed these answers in a clear, concise and accurate

manner.

9. In addition, I recall several exchanges during the interviews where Frisbee asked me to clarify my questions. As I recall, I may have misstated particular facts or details of the investigation and Frisbee corrected my errors so that I would have a better understanding of the investigation. Frisbee also asked questions regarding the investigation and how the FBI learned of his involvement, what led the FBI to conduct a search warrant at his residence in April 2003, and how we knew where drugs were hidden on his property.

10. As an FBI Agent I have conducted hundreds of interviews. My interviews with Roy Frisbee were fairly typical and not unlike many other interviews I've conducted. Although Frisbee was somewhat hesitant to provide information because, according to attorney, he didn't want to be viewed as a "rat" by other inmates he answered all my questions clearly and accurately. Frisbee was alert and actively participated in my interviews with him. I believe he was fully aware and understood his legal situation.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Special Agent Timothy J. O'Malley
Federal Bureau of Investigation

Subscribed and sworn to before me this 23rd day of January 2008.

_____
ANN K. YUUKI   COMM EXP 03/14/08
1st JUDICIAL CIRCUIT
HON HI

Page 3